<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LISA M. JEFFERSON, | Civil Action No. 13-5204 (SDW) |
| Plaintiff, | |
| v. | **OPINION** |
| | September 29, 2014 |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Lisa Jefferson's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"), with respect to Administrative Law Judge Richard L. De Steno's ("ALJ" or "ALJ De Steno") denial of Plaintiff's claim for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and XVI, respectively, of the Social Security Act (the "Act"). Plaintiff, pursuant to 42 U.S.C. § 405(g), seeks review of the determination of the Commissioner, which denied Plaintiff's applications for DIB and SSI under the Act.

This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). Venue is proper under 28 U.S.C. § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons set forth below, this Court **REMANDS** this matter for further review.

1

**BACKGROUND AND PROCEDURAL HISTORY**

On or about August 16, 2010, Plaintiff filed a Title II application for DIB, as well as a Title XVI application for SSI alleging a disability causally related to injuries suffered in a car accident on March 17, 2009.  (R. 10, 149, 153, 177.)  Both claims were initially denied on February 3, 2011, and upon reconsideration on June 18, 2011.  (R. 10, 65, 76.)  On August 8, 2011, Plaintiff submitted a written request for a hearing before ALJ De Steno.  (R. 114-15.)  Plaintiff, represented by counsel, appeared and testified at the hearing on May 24, 2012.  (R. 28-43.)  On June 1, 2012, ALJ De Steno issued a decision denying the Plaintiff's applications, concluding that Plaintiff was not disabled.  (R. 10; Pl.'s Br. 1-2.)  Thereafter, Plaintiff sought an Appeals Council review, and on July 3, 2013, the Council determined that there were no grounds for review.  (R. 1-5.)  Plaintiff now seeks a determination that the Commissioner erred in denying Plaintiff's DIB and SSI applications, because Plaintiff argues that the denial of benefits was not based on substantial evidence.  (Pl.'s Br. 2, 9.)

***Education and Work History***

Plaintiff was born on September 14, 1967 and is currently 47 years old (R. 51.)  She resides in New Jersey with her two daughters, ages 18 and 12.  (R. 15.)  She claims to have an 11th grade education and is able to communicate in English.  (R. 190.)  Prior to the onset of her alleged disabling conditions, she worked full-time for the State of New Jersey as a housekeeper at Greystone Psychiatric Hospital ("Greystone") from 2005-2009.  (R. 190.)  While at Greystone, Plaintiff was responsible for the upkeep of patient rooms, bathrooms, lobby and staff areas.  (R. 32.)  In performing her various housekeeping duties, Plaintiff was required to push a cleaning cart containing cleaning supplies and a bucket of water.  (R. 33.)  Prior to Greystone, in 2002, she worked part-time for the City of Newark as a crossing guard for local schools.  (R. 33.)

***Medical History***

Plaintiff claims that she was unable to return to work because of injuries related to a car accident on March 17, 2009.  (R. 249.)  As a result of the accident, Plaintiff complains of significant discomfort in her spine, neck, and back.  (R. 34, 249.)  Plaintiff contends that she cannot stand or sit continuously for longer than an hour.  (R. 34-37.)  Additionally, Plaintiff claims that she can now carry only five pounds, is no longer able to perform household chores, and requires assistance when bathing and dressing herself.  (R. 35, 38.)

Further, Plaintiff claims that she suffers from various mental impairments as a result of her change in lifestyle stemming from the car accident injuries.  (R. 36.)  Plaintiff testified that she suffers from constant headaches, panic attacks, depression, and concentration and memory issues. (R. 39-41.)  To treat her alleged mental impairments, Plaintiff was prescribed medication (Celexa and Depakote XR), she attends therapy meetings twice a month and sees a psychotherapist once a month.  (R. 41, 425.)

Following Plaintiff's injury, on April 9, 2009, Dr. James Lee made an initial assessment that Plaintiff was suffering from a "[t]raumatic cervical sprain with spasm" of the spine and "[c]ostoscapular syndrome of the right side."  (R. 241, 250.)  Dr. Lee recommended that Plaintiff receive physical therapy and continue her current pain medication of Advil and Naprosyn.  (*Id.*) Following an initial assessment, Dr. Lee completed disability paperwork for Plaintiff's employer stating that, although she is currently unable to perform her employment duties, she can return to full duty as of April 20, 2009.  (R. 251-52.)  On May 7, 2009, Plaintiff returned to see Dr. Lee, who noted that Plaintiff had not attended physical therapy and recommended that Plaintiff not lift anything greater than twenty pounds or anything overhead because she had cervical radiculopathy. (R. 263-266.)

In May 2009, an MRI was conducted on Plaintiff's brain, revealing hypoplasia of the inferior vermis and "CSF attenuation extra-axial space communicating with the 4th ventricle," which is suggestive of Dandy-Walker Syndrome. [1]  (R. 226-27.)  Later that month, Plaintiff was referred to a neurologist, Dr. Guatam Sehgal.  (R. 239.)  During that examination, Plaintiff complained of both pain and stiffness in her back and neck—as well as fatigue and depression. (R. 239.)  Dr. Sehgal noted that Plaintiff's MRI was "unremarkable," and that there were no discerning neurological issues upon examination.  (R. 240.)

On June 18, 2009, Plaintiff completed a psychological assessment with psychologist Dr. Phillip D. Goldstein.  (R. 228.)  Dr. Goldstein's impression was that Plaintiff's judgment and insight were both good, but that she exhibited significant emotional disturbances that had negatively affected her relationships with both family and friends, and in her overall level of functioning.  (R. 229.)  Additionally, Dr. Goldstein reported that Plaintiff's emotional feelings decreased her concentration levels.  (*Id.*)

On August 8, 2009, Plaintiff returned to Dr. Sehgal for a follow-up visit.  (R. 236.)  She again complained of neck and back pain that radiated to her left upper and lower extremities.  (*Id.*) On August 27, 2009, Dr. Sehgal put Plaintiff through a nerve conduction velocity test and an electromyography, the results of which were consistent with left L5-S1 lumbosacral radiculopathy. (R. 231-33.)  Additionally, Plaintiff underwent another MRI, and after reviewing the results, Dr. Lee noted that the MRI revealed herniation of C3-C4 discs and anterior and posterior bulges at

---

[1] According to the National Institute of Neurological Disorders and Stroke, "Dandy-Walker Syndrome is a congenital brain malformation involving the cerebellum . . . and the fluid-filled spaces around it. The key features of this syndrome are an enlargement of the fourth ventricle . . . . Symptoms . . . include increased intracranial pressure such as irritability and vomiting, and signs of cerebellar dysfunction such as unsteadiness, lack of muscle coordination, or jerky movements of the eyes may occur." *See* http://www.ninds.nih.gov/disorders/dandywalker/dandywalker.htm (last visited Sept. 23, 2014).

C4-C5, C5-C6, and C6-C7.  (R. 269.)  Dr. Lee indicated that Plaintiff should continue on light duty.  (*Id.*)

Beginning in December 2009, Plaintiff was under the care of various other doctors.  First, Plaintiff's primary care physician, Dr. Dinesh Patel, advised her to rest from December 8 to December 15, 2009, indicating that Plaintiff would be "fit to work" on December 16, 2009.  (R. 280.)  On December 16, 2009, Plaintiff saw Dr. Joseph Salomone, a pain management specialist, who administered a pain management injection, and advised Plaintiff not to work for two months.  (R. 298.)  Dr. Salomone also noted that Plaintiff had reduced range of motion and pain in the cervical, thoracic, and lumbar spines.  (R. 295.)  Plaintiff was also referred to Dr. Damian Martino, a pain management specialist with Jersey Rehab, who stated that Plaintiff's cervical region was externally unremarkable, but diagnosed Plaintiff with cervical spasms, spondylosis and radiculitis.  (R. 366-68.)  On January 15, 2010, Dr. Martino scheduled Plaintiff for a cervical epidural injection, which would continue for the next few months, and referred Plaintiff to a neurologist.  (R. 371-378.)  In February 2010, Dr. Martino commented on the results of Plaintiff's videonystagmography ("VNM"), indicating that Plaintiff has a left vestibular lesion, and central vestibular dysfunction.  (R. 354-56.)  Dr. Martino recommended that Plaintiff begin balance and stability rehabilitation.  (R. 356.)

In a letter dated February 22, 2010, Dr. Salomone stated that Plaintiff's cervical paraspinal spasms had improved, and that the right and left paraspinal muscles of the low back were in moderate hypertonicity.  (R. 281, 284.)  Additionally, Dr. Salomone concluded that Plaintiff was suffering from: bulging disc at C4-5, C5-6, C6-7, L5-S1; disc herniation at C3-4; left L5-S1 lumbosacral radiculopathy; and lumbago.  (R. 284.)  Dr. Salomone opined that the injuries that Plaintiff suffered were a direct result of the motor vehicle accident, and that these injuries "have

5

created a consequential permanent and progressive impairment with a secondary and significant loss of function." (R. 285.)

Plaintiff continued treatment with doctors at Jersey Rehab from March 2010 through August 2010. At one point during that time frame, Plaintiff was advised that she was ready for light duty, but was subsequently directed not to work because of a cervical herniated nucleus pulposus ("HNP") at C3-C4, and cervical spasms. (R. 351, 376-89.) In October 2010, Plaintiff was referred to Dr. Mariam Rubbani for an orthopedic/ physical examination. (R. 309-10.) Dr. Rubbani concluded that Plaintiff's only limited range of motion existed in the lumbar spine, and that there was no indication of muscle weakness or gait abnormalities (*Id.*) Similar to previous diagnoses, Dr. Rubbani indicated that Plaintiff showed signs of Dandy-Walker Syndrome. (R. 310.)

On October 6, 2010, State Agency consultant physician Dr. Raymond Briski assessed Plaintiff's residual functional capacity, and estimated that Plaintiff could: (1) lift twenty pounds occasionally and ten pounds frequently; (2) stand, walk, and sit for about six hours in an eight-hour workday; and (3) was unlimited in her ability to push or pull. (R. 62.) Dr. Briski also noted that Plaintiff did not show any manipulative, visual, communicative, or environmental limitations. (R. 62-63.)

On or about October 28, 2010, Plaintiff visited Dr. Kim Arrington and claimed that she suffered from anxiety, depression, panic attacks, and had difficulty sleeping, which she claims was a result of a drive-by shooting involving her daughter several years ago. (R. 313-15.) Dr. Arrington noted that while Plaintiff's presentation (gait, posture, appearance, and communication) was normal, Plaintiff's concentration and memory skills were impaired, and her intellectual functioning was in the low average range. (R. 313.) Dr. Arrington diagnosed Plaintiff with anxiety

and panic disorders, and recommended that she consult with a psychiatrist regarding her anxiety and depression—but stated that Plaintiff's overall prognosis was fair.  (R. 315.)  On January 26, 2011, State Agency physician Dr. Seymour Bortner also assessed Plaintiff's mental health.  (R. 64.)  Dr. Bortner found that Plaintiff had concentration issues, but concluded that Plaintiff was not credible since she gave conflicting statements about her alleged panic attacks.  (*Id.*)

From January 2011 to the end of February 2011, Plaintiff received physical therapy at the University of Medicine and Dentistry of New Jersey ("UMDNJ").  (R. 316-42.)  The physical therapists noted that Plaintiff was completing her exercises with more ease, but continued to complain about the pain in performing the exercises.  (R. 324, 326, 328.)  During this time, Plaintiff returned to Dr. Goldstein for a follow-up visit.  (R. 332.)  Dr. Goldstein reported that he was unable to identify neurosurgical spine issues, and that Plaintiff did not present a surgical pathology or radiographic surgical lesion.  (R. 334.)  Thereafter, Plaintiff continued with physical therapy where therapists noted significant improvements in posture and exercise performance.  (R. 336.)  The therapist subsequently indicated that Plaintiff could be discharged and given a home exercise program.  (R. 338.)

In May 2011, the New Jersey Department of Labor requested information from Dr. Alhamrawy regarding Plaintiff's medical condition.  (R. 359.)  Dr. Alhamrawy provided the requested information, indicating that Plaintiff suffered from cervical HPN at C3-C4, and cervical spondylosis.  (R. 360.)  It was also noted that Plaintiff has difficulty with heel to toe walking and some range of motion limitation in her neck.  (*Id.*)  Dr. Alhamrawy recommended that Plaintiff limit lifting and carrying, pushing and pulling and should only stand or walk for less than two hours and sit for less than six hours per day.  (R. 361.)

7

**LEGAL STANDARD**

Under 42 U.S.C. § 405(g) district courts have plenary review of the ALJ's decision to deny a plaintiff's application for Social Security benefits. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). A reviewing court must uphold the ALJ's factual determinations if they are supported by "substantial evidence." 42 U.S.C. § 405(g); *Fargnoli v. Massanari*, 247 F.3d 24, 38 (3d Cir. 2001); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence means more than "a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Furthermore, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).[2]

The ALJ must consider and weigh all the pertinent medical and non-medical evidence, and "adequately explain in the record his reasons for rejecting or discrediting competent evidence." *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986)); *see also Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). Additionally, a reviewing court may not set aside an ALJ's decision simply because a

---

[2] *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) ("Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.").

reviewing court would have reached a different decision.  *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citation omitted).  The court is required to give substantial weight and deference to the ALJ's findings.  *See Scott v. Astrue*, 297 F. App'x 126, 128 (3d Cir. 2008).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits."  *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)).  A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits."  *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984).

## DISCUSSION

### *Five-Step Sequential Analysis*

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Social Security Act ("Act") if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months.  42 U.S.C. § 432(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his ailment have been "established by medically accepted clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological

abnormalities which could reasonably be expected to produce the pain or other symptoms alleged." 42 U.S.C. § 423(d) (5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis to determine disability under the Act. *See* 20 C.F.R. § 404.1520; *see also Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479-80 (3d. Cir. 2007). Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"), which is defined as work that involves doing significant and productive physical or mental duties for pay or profit. *See* 20 C.F.R. §§ 404.1520(b). If the claimant engages in SGA, he is not disabled, for purposes of receiving social security benefits, regardless of the severity of his impairment(s). 20 C.F.R. § 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two. *Id.* § 416.920.

If the claimant establishes that she is not currently engaged in SGA, the ALJ then determines whether, under step two, the claimant suffers from a severe impairment or combination of impairments. *Id.* § 404.1520(a)(4)(ii). An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. *Id.* § 416.921. If a severe impairment or severe combination of impairments is not found, the claimant is not disabled. If the ALJ finds a severe impairment or combination of impairments, he then proceeds to step three, where he must determine whether the claimant's impairment(s) is equal to or exceeds one of those included in the Listing of Impairments in 20 C.F.R. Part 404 Subpart P, App. 1. 20 C.F.R. §§ 416.920(d), 416.925, 416.926.

Under step three, if an impairment or combination of impairments meets the statutory criteria of a listed impairment, as well as the duration requirement, the claimant is disabled, and

entitled to benefits.  *Id.* § 416.920(d).  However, if the claimant's impairment(s) do not meet the severity of the listing impairment, or if the duration is not sufficient, the ALJ proceeds to the next step.  *Id.* § 416.920(e).

Before undergoing the step four analysis, the ALJ must determine the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.  *Id.* § 416.920(e).  The ALJ considers all impairments in this analysis, not just those deemed severe.  *Id.* §§ 404.1520, 416.920(e), 416.945; SSR 96-8p.  After determining a claimant's RFC, the ALJ must determine, under the step four analysis, whether the claimant has the RFC to perform the requirements of his past relevant work.  *Id.* §§ 404.1520(e)-(f), 416.920(f).  If the claimant is able to perform his past relevant work (or alternatively does not have past relevant work), he will not be found disabled under the Act.

If the claimant is unable to resume his past work, the disability evaluation proceeds to the fifth and final step.  At step five, the ALJ must determine whether the claimant is able to do any other work considering his RFC, age education, and work experience.  *Id.* § 416.920(g).  Unlike the first four steps of the analysis, where the claimant bears the burden of persuasion, if the claimant establishes that his impairment prevents him from performing any of his past work, the burden shifts to the ALJ at step five to determine whether the claimant is capable of performing an alternative SGA present in the national economy.  *See* 20 C.F.R. §§ 404.1520(g), 416.920(g); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987).

***ALJ's Decision***

ALJ De Steno determined that Plaintiff was not disabled as defined under the Act, and therefore was not eligible for Social Security Disability Insurance Benefits or Supplemental Security Income.  (R. 10.)

At step one, the ALJ found that Plaintiff had not performed SGA since December 2009, for a continuous period of twelve months.

At step two, he found that Plaintiff had the following severe physical impairments, either individually or collectively: disc disease/ spinal impairments and Dandy-Walker syndrome  (R. 13.)  These impairments were considered to be severe because they were "medically determinable impairments that . . . significantly limit the [plaintiff's] physical" abilities to do one or more basic work activities and occurred over a twelve-month period.  (*Id.*)  On the other hand, the ALJ determined that Plaintiff's alleged mental impairments were not severe because such allegations were based on subjective, unsupported evidence. (*Id.*)

At step three, ALJ De Steno found that Plaintiff did not have any impairments or combination of impairments, either physically or mentally, that met the Listing of Impairments under 20 C.F.R. Part 404, Subpart P, App. 1.[3]  (R. 14.)  Regarding the alleged physical impairments, he indicated that none of Plaintiff's spinal impairments met the requirements under medical listing 1.04. He also noted that although there is no specific listing that applies to Dandy-Walker Syndrome, he considered it "generally" under medical listing 11.00, which includes

---

[3] The ALJ determined that Plaintiff's medical assessments failed to prove a severe mental impairment because the evidence did not establish "mental limitations having greater than a slight or minimal effect on [Plaintiff's] ability" when considering the four broad functional areas in section 12.00C of the Listing of Impairments for evaluating mental disorders (20 C.F.R. Part 404, Subpart P, App. 1).  (R. 13.)

neurological impairments.  (*Id.*)  Nevertheless, ALJ De Steno indicated that Plaintiff's condition "does not meet the criteria of any of the listings considered."  (*Id.*)

Regarding the alleged mental impairments, ALJ De Steno conducted a detailed analysis at this third step, concluding that they did not fulfill the criteria under Listing 12.00C—which is equivalent to a determination that Plaintiff's mental impairments were not severe.  (R. 13.)  The analysis for determining the severity of mental impairments is essentially the same for steps two and three.  *See* 20 C.F.R. Part 404, Subpart P, App. 1; *see also Frank-Digiovanni v. Colvin*, No. 12-1605, 2014 U.S. Dist. WL 2177090, at *4-5 (M.D. Pa. May 22, 2014) (finding that although the ALJ did not properly account for one of the plaintiff's impairments in step two, the error was harmless because the ALJ accounted for the impairment within the opinion and considered its impact on the disability determination).  The criteria for determining the severity of mental impairments or whether they meet the respective listing requirements is under paragraphs B and C of Listing 12.00C.  *See* 20 C.F.R. Part 404, Subpart P, App. 1, 12.04B, 12.06B; *see also* 20 C.F.R. § 404.1520(c).

Under this analysis, Plaintiff has the burden of establishing "marked" limitations in two of the following: (1) activities of daily living; (2) maintaining social functioning; (3) maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation.  *See* 20 C.F.R. § 404, Subpart P, Appendix 1.  ALJ De Steno concluded that Plaintiff had only mild limitations in the first three functional criteria and had no experiences of decompensation.  These conclusions are supported by the findings of psychologists Dr. Goldstein and Dr. Arrington.  (R. 13-14.)  Dr. Goldstein stated that Plaintiff was able to dress, bathe, and groom herself, and that her speech was coherent and goal directed.  (R. 229.)  Additionally, Dr. Arrington, to whom the ALJ gave no

deference, indicated that Plaintiff is able to dress and groom herself, as well as use a computer. (R. 13-14, 314-15.)

With respect to social functioning, although Plaintiff testified that she does not leave the house alone or drive a car, she previously stated that she does in fact leave the house and drive alone. (R. 64.) Based on this discrepancy, psychiatrist Dr. Bortner concluded that Plaintiff is not credible, and that she does not have any social limitations. (*Id.*) As for concentration, persistence, or pace, Dr. Goldstein reported that Plaintiff had good judgment, and neurologist Dr. Sehgal's testing revealed that Plaintiff had an intact memory and judgment. (R. 236.) Even Dr. Arrington, who stated that Plaintiff had difficulty maintaining attention and concentration, noted that her insight and judgment prognosis was fair. (R. 315.) The ALJ concluded that Plaintiff has not experienced any episodes of decompensation. (R. 14.)

Plaintiff argues that ALJ De Steno failed to properly consider Dandy-Walker Syndrome as a neurological impairment in the context of medical listing 11.00. Here, the ALJ merely stated that he considered Dandy-Walker syndrome in the context of Listing 11.00, and that it "does not meet the criteria of any of the listings considered." (R. 14.) Instead, the ALJ should analyze why Plaintiff's impairment was not medically equivalent to one of the listed impairments. *See Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000) (reversing and remanding for the ALJ to discuss why the claimant's combination of impairments was not medically equivalent to one of the listed impairments). Accordingly, this Court will remand for a complete analysis of Dandy-Walker Syndrome under Listing 11.00.

Following step three, ALJ De Steno determined Plaintiff's RFC. "'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir.1999) (citing 20 C.F.R.

14

§ 404.1545(a)).  "In making a residual functional capacity determination, the ALJ must consider all evidence before him.  Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett*, 220 F.3d at 121 (internal citations omitted).  If the explanation of the ALJ's decision is inadequate, the case should be vacated and remanded to the ALJ in order to fully develop and explain the factual findings. *See Burnett*, 220 F.3d at 121 (ordering remand where ALJ did not explain why he rejected certain evidence that supported plaintiff's claim).

ALJ De Steno determined that Plaintiff had the RFC for "carrying objects weighing up to ten pounds; sitting up to six hours, and standing and walking up to two hours in an eight-hour day."  (R. 14-15.)  Additionally, he found that Plaintiff does not suffer from non-exertional limitations.  (R. 21.)  Plaintiff also argues that the ALJ erred in determining that the Plaintiff had the RFC to perform the full range of sedentary work.  (R. 21.)  Specifically, Plaintiff contends that the ALJ improperly rejected medical evidence from treating and consulting psychologists and neurologist, and failed to acknowledge contradictory evidence on the record.  (Pl.'s Br. 16-20.)

ALJ De Steno determined that Plaintiff had the RFC to perform a full range of sedentary work as supported by objective medical evidence.  (R. 20-21.)  In doing so, the ALJ based his findings on the objective medical evidence in the record, and rejected contrary and subjective evidence, as he found such evidence was the result of inconsistent medical evidence and statements by Plaintiff "concerning the intensity, persistence and limiting effects of [her] symptoms . . . ."  (R. 20-21.)  However, the ALJ did not consider Plaintiff's mental and neurological impairments, regardless of severity.  Further, Dr. Rubbani's opinion, the only opinion that the ALJ gave deference to, noted that Plaintiff showed signs of Dandy-Walker Syndrome, which was not discussed in the RFC analysis.  (R. 310.)  Drs. Goldstein, Arrington, and Bortner all noted mental

issues involving concentration and resulting from depression or anxiety, but ALJ De Steno did not

rely on Drs. Arrington's or Bortner's opinions nor did he discuss their consistent assessments.  (R.

64, 229, 315.)  The Commissioner argues that since the ALJ found that Plaintiff had no severe

mental impairments, a discussion of mental impairments at the RFC analysis was not warranted.

(Comm's Br. 21.)  However, in determining an individual's RFC, if the plaintiff has more than

one impairment, the ALJ must consider all medically determinable impairments in totality,

regardless of severity.  20 C.F.R. § 404.1545(a)(2).  Therefore, although the ALJ found Plaintiff's

mental impairments are less than severe, he still acknowledged such impairments and therefore

should have addressed them in his RFC analysis.  *See id.*; *Nazario v. Astrue*, No. 09-4287 (SDW),

2010 WL 3023323, at *5-6 (D.N.J. July 26, 2010).  On remand, the ALJ should consider the

combined effects of the Plaintiff's impairments irrespective of their severity.

Next, at step four, ALJ De Steno concluded that Plaintiff could not perform any past

relevant work—that is work as a housekeeper at Greystone—and thus moved on to step five.  (*Id.*)

At step five, the ALJ determined that Plaintiff was able to perform other jobs that existed in the

national economy, and therefore was not disabled.  (R. 22.)

Plaintiff challenges the ALJ's step five determination that there exist jobs in substantial

numbers in the national economy that Plaintiff could perform.  (Pl.'s Br. 21.)  Specifically, Plaintiff

contends that the ALJ was required to consult a vocational expert given her non-exertional

impairments.  (*Id.* at 22.)  When a plaintiff has purely exertional limitations an ALJ may rely solely

on the Medical-Vocational Guidelines (20 C.F.R. Part 404, Subpart P, App. 2) to determine

whether jobs exist in significant numbers in the national economy that the claimant could perform,

but when a plaintiff has even one non-exertional limitation, a vocational expert must` be consulted

or the plaintiff must be given the opportunity to provide his own witness.  *Billingsley v. Comm'r*

*of Soc. Sec.*, No. 08-1912, 2009 WL 3128436, at *4 (D.N.J. Sept. 25, 2009) (citations omitted) (holding that although there was substantial evidence that claimant did not suffer a severe impairment, the ALJ still needed to utilize a vocational expert because of non-exertional limitations); *see also Burnam v. Schweiker*, 682 F.2d 456, 458 (3d. Cir. 1982) (rejecting reliance on the grid because it does not "purport to establish the existence of jobs for persons . . . with both exertional and nonexertional impairments").

Here, in addition to Plaintiff's exertional limitations, several examining physicians determined that Plaintiff has potential limitations of the non-exertional type resulting from anxiety, depression, lack of concentration, difficulty following complex instructions, limited range of motion, and issues pertaining to Dandy-Walker syndrome. *See* 20 C.F.R. § 404.1569a(c) (listing examples of non-exertional limitations, which included: difficulty functioning because of anxiety or depression; (ii) difficulty maintaining attention or concentrating; and (iii) difficulty understanding or remembering detailed instructions); *see also* R. 59-64, 228-29, 313-15. Therefore, the ALJ was required to consult a vocational expert to determine the availability of jobs in the national economy that Plaintiff could perform, or alternatively, give her advance notice that he did not plan to call a vocational expert so that she could plan accordingly.

The ALJ should clarify the analysis regarding Plaintiff's non-exertional limitations and RFC capacity. Therefore, this Court finds the ALJ improperly relied on the guidelines without calling a vocational expert.  On remand, the ALJ must consult a vocational expert.

**CONCLUSION**

For the foregoing reasons, this Court finds that substantial evidence does not support the ALJ's decision.  Accordingly, this Court **REMANDS** this matter to the ALJ for further proceedings consistent with this Opinion.

<u>s/Susan D. Wigenton, U.S.D.J.</u>

Orig:   Clerk
Cc:     Parties

18